M.r. Justice Mac Arthur
delivered the opiuion of the court:
The declaration states a good cause of action. It alleges that the injury was caused by a deep, dangerous, and great excavation in Nineteenth street, which the defendant had allowed to remain in said street, in its roadway and sidewalk, and which was unguarded and without any expedient to warn persons passing along and crossing over said highway and its sidewalks. In order to make good this declaration, it was incumbent on the plaintiff'to prove that he was passing along or crossing over Nineteenth street, and that he fell into a pit or excavation in the street itself. It appears by the proof that he was outside of the street, and that he sustained no damage in consequence of any defect or any want of repairs in Nineteenth street. The issue raised by the pleadings was whether the alleged injury resulted from an excavation in the street, and of this there was neither proof nor pretense at the trial. The plaintiff was not travelling on Nineteenth street, but on what he calls a foot-path, at the time of the accident. This foot-path was on the grounds of the Washington Asylum, and within the limits of a government reservation ; and whether the plaintiff had a right to use it after nightfall or not, it is quite certain that it had never been dedicated to the public in such manner as to make the District responsible for damage done to individuals passing over it, or to keep it in repair.
It appears from the testimony that the work of grading and improving Nineteenth street was begun previous to the occurrence for which plaintiff claims damages, but that it had not been graded through or opened; that at the place where the accident occurred a grade of about eight feet deep had been cut, and that the entire space or width of the street, including the carriage-way and sidewalks, had been excavated for four or five hundred feet each way north and south from where the plaintiff fell, and that there was no other street or highway ever laid out on the reservations east of Nineteenth street; that C street was the only public thoroughfare leading into the street in front of the asylum, and that barricades *144 were constructed at the intersection of C street and Nineteenth to exclude travel entirely from the latter daring the progress of the improvement. It also-appears that plaintiff was outside of the limits of Nineteenth street, and that he fell from the grounds of the Washington Asylum. It is, therefore, plain that no damage was caused by any defect on the travelled track of Nineteenth street. The District- had the right to reduce the grade of Nineteenth street southeast, and it was their duty to exclude passengers, on foot or otherwise, while the work Was going on, or at least to give some signal of warning to the public. This they did by barricading C street, which was the only public thoroughfare leading into it in that locality. But the District is uot bound to adopt these precautions in order to signalize individuals who stray out of the public roads and deviate into private paths belonging to other parties. It would be exposing municipal liability to a dangerous responsibility if they were bound to erect barricades where the public have no right to travel. It is only when the dangerous place is so near to the public roads or highways as to make it unsafe for travellers that the District is bound to exercise these precautions, and when individuals leave the roads and highways which are provided for public travel, they must take the risk and be their own guard. Whether an action can be framed upon the special circumstances of this case, we cannot determine; but, for the reasons assigned, we are of opinion that the judgment must be reversed and a new trial ordered.